**IN THE COURT OF APPEALS OF IOWA**

No. 24-1891
Filed February 19, 2025

**IN THE INTEREST OF D.M., R.G., and R.G.,**
**Minor Children,**

**R.G., Father,**
    Appellant.
_____

    Appeal from the Iowa District Court for Webster County, Joseph L. Tofilon,

Judge.


    A father appeals the termination of his parental rights to three of his children.

**AFFIRMED.**


    Ricki L. Osborn Stubbs of Osborn Stubbs Law Office, P.C., Fort Dodge, for

appellant father.

    Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney

General, for appellee State.

    Alesha M. Sigmeth Roberts of Sigmeth Roberts Law, PLC, Clarion,

guardian ad litem for minor children.

    Brandy Lundy, Moorland, attorney for minor children.


    Considered by Tabor, C.J., and Schumacher and Chicchelly, JJ.

**SCHUMACHER, Judge.**

A father appeals the termination of his parental rights to three of his children: D.M., born in 2010; R.G., born in 2013; and R.G., born in 2015.[1] He challenges the sufficiency of the evidence supporting the grounds for termination, claims termination is not in the children's best interests because permissive grounds preclude termination, and argues the district court erred in denying his request for additional time to work toward reunification. Upon our review, we affirm.

**I.     Background Facts and Proceedings**

This family came to the attention of the Iowa Department of Health and Human Services (HHS) most recently in November 2022,[2] amid concerns about the parents' substance use and mental health. The parents are not married, but they have been together for nearly two decades. They have eight children who have been adjudicated children in need of assistance.

In March 2024, due to lack of meaningful progress by either parent, the State petitioned to terminate the parents' rights to their four younger children, born in 2021, 2022, 2022, and 2023. A permanency/termination hearing took place in April, after which the district court entered an order terminating the parents' rights to the four younger children.[3] With regard to the older children, the court entered

---

[1] The father's parental rights to his oldest child—D.G., born in 2007—are not at issue. The parties agreed that a separate permanency order should be entered for D.G. because she turns eighteen in February 2025. The supreme court dismissed the mother's appeal because she did not timely file a petition on appeal.

[2] A prior HHS case was closed in April 2022. The caseworker reported the concerns in that case also involved "substance abuse and mental health."

[3] That order was affirmed on appeal with respect to both parents. *In re D.M.*, No. 24-0677, 2024 WL 3518078 (Iowa Ct. App. July 24, 2024).

a permanency order granting the parents six additional months to work toward reunification.[4]  The court stated in part:

> In the interim, all parties will make best efforts to fulfill the conditions and requirements set forth in the contract of expectations so that if those conditions and requirements are fulfilled, the need for removal of the children from home will no longer exist at the end of the six-month period.
>
> The Court finds that it is still contrary to the welfare of the children to be returned home because the children would still be without proper care and supervision.

Shortly thereafter, the State petitioned to terminate the parents' rights to the three older children at issue here.

The termination hearing took place in November.  The caseworker testified that since the April hearing, the father had tested positive for cocaine four times.  The caseworker stated the father had not "had a negative test in a while."  When the department "would ask him when he last used, he would have a hard time or wouldn't want to answer that."  The father's most recent test in late September was positive for cocaine and methamphetamine.[5]  The father maintained the test results were "not accurate."  During his testimony, however, he admitted he had "been using cocaine," and he agreed there was "a possibility" that his cocaine was "cut with meth."  Nonetheless, the father believed he could parent the children "today."  In the alternative, he requested "six to three months" to work toward reunification.

---

[4] The court entered an order in June reiterating its order, after clarifying a question whether the permanency hearing had been prematurely held.  Specifically, the court stated, "By agreement of the parties, the six-month extension is retroactive to April 9, 2024."

[5] The mother took a test on the same date, which was also positive for those substances.

Meanwhile, the children were doing well in their placements. The older R.G. was in a pre-adoptive placement with a family who also planned to adopt two of his younger siblings. The younger R.G. was in a pre-adoptive placement with another family who planned to adopt the children's other two younger siblings. And D.M. was placed in a facility specializing in care for autism.

The caseworker, in-home provider, and guardian ad litem recommended termination of parental rights. The court thereafter entered an order terminating both parents' rights pursuant to Iowa Code section 232.116(1)(g) (2024). The father appeals.

## II.    Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). Upon our review, our primary consideration is the best interests of the children, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the children's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III.    Grounds for Termination

The father challenges the sufficiency of the evidence supporting the grounds for termination cited by the juvenile court. The court may terminate under section 232.116(1)(g) if it finds:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family or a court of competent jurisdiction in another state has entered an order involuntarily terminating parental rights with respect to another child who is a member of the same family.

      (3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.

      (4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

The father challenges only the court's findings that he has not responded to services and additional time will not make a difference. *See* Iowa Code § 232.116(1)(g)(3)–(4).

The father has a lengthy history of substance use and failure to substantially comply with services. Despite years of reunification services, he has not fully addressed the concerns that initiated these proceedings. *See id.* § 232.116(1)(g)(3) (considering whether the parent is able to respond to services offered). The father, age thirty-four, testified he has used drugs since he "was about sixteen." The father stated: "I said I will do inpatient. I will do more than three months inpatient. I'll do it. One month ain't going to do it." He testified that in the last two years, his longest period of sobriety was "about three months."

Although the father had accomplished a short period of sobriety, he had not proved he was able to maintain progress long enough to move beyond fully-supervised visitation. *See In re M.T.*, No. 24-1009, 2024 WL 4502261, at *3 (Iowa Ct. App. Oct. 16, 2024) ("Without this necessary progression to unsupervised visits, we are not convinced that the [fa]ther is able to care for [the children]." (cleaned up)). This proceeding is reminiscent of his prior termination case, when the court observed, "Neither parent ever reached unsupervised visits due to department concerns that the parents were still using." *D.M.*, 2024 WL 3518078, at *2. Indeed, the oldest child, D.G., could not remember when the department was not involved with the family. Considering the father's lack of progress in either

termination case, we are not convinced he is able to adequately care for the children in the future. *See In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020) (considering "the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future" (citation omitted)). Clear and convincing evidence exists for termination of his parental rights under section 232.116(1)(g).

## IV.    Best Interests/Exceptions to Termination

Combining the second and third steps of our three-step analysis in termination proceedings, the father next claims termination is not in the children's best interests because the older R.G. wants "to return home," *see* Iowa Code § 232.116(3)(b); because of the bonds he and the children share, *see id.* § 232.116(3)(c); and because D.M. is in a facility for care and treatment such that "continuation of the parent-child relationship is not preventing a permanent placement for the child," *see id.* § 232.116(3)(d). As the father does not address how the best-interest factors in section 232.116(2) weigh against termination, we limit our analysis to the exceptions in section 232.116(3). *In re N.S.*, No. 24-0750, 2024 WL 3290380, at *2 (Iowa Ct. App. July 3, 2024).

First, we observe "[t]he court need not terminate the relationship between the parent and child if . . . [t]he child is over ten years of age and objects to the termination."[6] Iowa Code § 232.116(3)(b). On this topic, the guardian ad litem opined:

---

[6] The older R.G. was ten years old at the time of the termination hearing. The younger R.G. also objected to termination, but as the district court noted, "[s]he is not yet [ten] years old, however, so the permissive exception does not apply."

> I do understand that [R.G.] and [R.G.] would like more time. However, with the prior case being open, let's assume, sometime in 2021, closed in '22. This case reopened in '22. We're now fall of 2024, you know, three plus out of the last four years, the Department ha[s] been involved in these parents' lives for the same reasons. They have had more than enough time to work on their own drug habits and mental health. These children need permanency. I think the foster parents, both the [families], are doing a fabulous job of keeping the six youngest connected and connected with their older sister [D.G.] That it's in their best interest to be termination—for termination to occur and to be adopted into those family units.

The district court found, "[R.G.] is 10 years old and his attorney states that he objects to the termination of his parents' rights. Regardless of the child's opinion, however, the Court believes that termination is overwhelmingly in his best interests." Like the district court, we conclude termination of the father's parental rights was proper despite the older R.G.'s objection. *See In re J.S.*, No. 16-0112, 2016 WL 899857, at *3 (Iowa Ct. App. Mar. 9, 2016) ("The children's yearning for reunification does not tilt the balance away from termination.").

Next, to avoid termination under section 232.116(3)(c), the "law requires clear and convincing evidence that termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) (cleaned up). On this topic, the district court found, "Although the children are arguably bonded with their parents, the short-term distress that will accompany termination of their rights is dwarfed by the long-term benefits to that termination." We concur. Under these circumstances, the father has not established termination of his rights will be detrimental to the children.

Finally, we note D.M.'s placement in a facility the caseworker described as "specializ[ing] in autism," "a long-term place . . . that can help him transition into adulthood." *See* Iowa Code § 232.116(3)(d) (allowing the court to decline to order

termination if "[i]t is necessary to place the child in a hospital, facility, or institution for care and treatment and the continuation of the parent-child relationship is not preventing a permanent family placement for the child"). The caseworker recalled "towards the end before we removed him, they were starting—[the father] was starting to struggle with him. [D.M.] was becoming more violent." And she stated D.M. was doing "great" in his current placement. She believed termination was the best "permanency option" for D.M. to "be sure that his needs are being met." The guardian ad litem similarly opined:

> [D.M.] is in [a facility specializing in autism care] and will be or could be there for quite some time. But he has some significant needs and I'm not sure that the parents could ever support him for that. I don't like orphaning him, but I think that it is in his best interest to do the termination and free him up possibly for family members to step up, if they're able to, or just to be a long-term resident of this facility.

Under these circumstances, we decline to apply this permissive exception, where "the reasons we have expressed elsewhere in this opinion all tilt convincingly toward termination." *In re A.H.*, No. 24-1144, 2025 WL 52856, at *2 (Iowa Ct. App. Jan. 9, 2025).

## V.     Additional Time

The father also contends the court should have allowed the "children to return home" or granted him "an additional six months to work towards reunification." *See* Iowa Code § 232.104(2)(b) (permitting the juvenile court to grant an extension to work toward reunification if "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period"). According to the father, with additional time he "will continue to save

money and look for a home he could buy on contract" and "can show he can be sober again and work towards bringing R.G. and R.G. home."

The district court denied the father's request, stating in part:

> The [child-in-need-of-assistance] cases have been pending for two years and the children have been removed from his custody for 18 months. [The father] has had that whole time to get clean and sober and has not done so. He has gained little to no insight into the needs of his children. His parenting skills have not meaningfully progressed and [he] cannot be a good, safe, and healthy parent to them. . . .
> [R.G. and R.G.] are in need of, and deserve, a safe, secure, and permanent home. Terminating the parental rights of the parents is a necessary step in that direction. [D.M.] is in need of group care and termination is required to keep him there given his parents' inability to understand the extent of his needs.

The father "bears the burden" to make the requisite showing under section 232.104(2)(b) to warrant an extension of time. *A.H.*, 2025 WL 52856, at *2. Upon our review, we agree with the district court that we have "absolutely no confidence in the [father's] abilit[y] to reunify within the next six months." We conclude a six-month extension is not appropriate.[7]

## VI.    Conclusion

Having found the statutory grounds satisfied and the application of a permissive exception or an extension of time unwarranted, we affirm termination of the father's parental rights to D.M., R.G., and R.G.

**AFFIRMED.**

---

[7] For the same reasons, the children could not be returned to the father's custody at the time of the termination hearing.